VREELAND v. MONNIER.

MORTGAGES—DEED AS SECURITY—TAX TITLES.
One who takes a deed of mortgaged land as security, and, by arrangement with the grantor, acquires certain tax titles for the latter's benefit, is merely a second mortgagee, whose interest is cut off by a valid foreclosure of the first mortgage.

Appeal from Wayne; Donovan, J.   Submitted April 2, 1901.   Decided July 2, 1901.

Bill by Eleanor B. Vreeland against Jennie M. Monnier to quiet title.   From a decree for complainant, defendant appeals.   Reversed.

*Atkinson & Atkinson,* for complainant.

*Jay Fuller,* for defendant.

HOOKER, J.   Eleanor B. Vreeland, the complainant, filed the bill in this cause to quiet her alleged title to lot 65 of Hannan's Belt Line addition, being part of private claim 678.

In December, 1891, Forrest R. Apger, who owned this lot, gave a mortgage for $150 upon it to defendant, Monnier, and in February, 1893, he conveyed the premises, subject to the mortgage, to Ira Apger, his father, who assumed and promised to pay the mortgage.   On May 3, 1895, Ira Apger died, leaving a widow and several children as his heirs at law.   Bolton was appointed administrator *de bonis non.*   These parties were originally made defendants in this cause, but complainant permitted the bill to be dismissed as to them.   Prior to Ira Apger's death, defendant, Monnier, had instituted proceedings in chancery for the foreclosure of her mortgage, and these were revived against Bolton, the administrator, and defendant obtained a commissioner's deed in August, 1897.

On June 6, 1895,—being after the death of Ira Apger, and during the pendency of the foreclosure suit,—a quitclaim deed was made by the controller of the city of Detroit to James J. Atkinson, conveying the interest of the city in said premises to him,—*i. e.*, for the term of 99 years,—which was acquired by the city at a sale for the taxes for the year 1893. Charles H. Apger, one of the heirs of Ira Apger, his wife joining, made a warranty deed of an undivided one-sixth of this lot to James J. Atkinson on June 14, 1895. On February 14, 1896, James J. Atkinson procured another quitclaim deed from the city for a special assessment for sidewalk laid in 1894, and on February 20, 1897, he procured and caused to be executed to one McGinn, by said city, a similar deed for the tax of 1894.

Bolton testified that he filed a bill to set aside the deed from Charles H. Apger to Atkinson upon the claim that it was given for security, and that he had a talk with Atkinson before filing it, in which Atkinson stated to him that it was an absolute deed, and not a trust deed. He then filed the bill. Atkinson's answer is not shown, but is said by one witness— *i. e.*, Apger—to have stated that it was not an absolute deed, but was taken as security. At all events, it is now conceded that it was taken as security for a loan; Mr. Atkinson himself so testifying, and stating that he "never negotiated a minute with Charles H. Apger for his interest in the estate at the time he got the deed." Apger testified that in June, 1895, it was understood that there were some tax titles standing against this lot, and Atkinson suggested to him that he (Apger) better buy them. He replied that he had nothing to buy them with, when Atkinson offered to loan him $75 on his interest in the estate, and take a trust deed as security. This deed was then executed and delivered, and the money paid over, less some $26, which was reserved by Atkinson to pay for the tax titles, and to settle a small indebtedness of $5 or $6. The amount paid for the three tax deeds was about $20. The tax titles were to be bought in Apger's name. Mr. Atkinson's testimony shows that the com-

plainant is a nominal party merely; that the deeds from McGinn and himself to her were for his convenience; and that he, and he only, has an interest in this proceeding, the bill being filed for his benefit.

Counsel for the complainant—*i. e.*, Mr. Atkinson—makes the point (apparently for the first time) in his supplemental brief that Apger did not deed the premises in controversy to him, and that inspection of Exhibit A will show that lot 65, mentioned in that paper,— *i. e.*, the deed from Apger,— is in private claim 78, instead of 678. This seems to be so in the printed record, but in the record of the deed introduced in evidence it is described as private claim 678. Exhibit A is not the original deed, but an alleged copy, attached to the answer; and, as the testimony tends to show that the deed was not produced at the trial (Atkinson testifying that it had been stolen from his office), it is probable that it was taken from the record, and that a mistake was made in transcribing it. The record of the deed is the only evidence upon the subject, and that has been shown to describe the land correctly. The clerical error should be disregarded, even if complainant's counsel had seasonably raised the point by calling attention to it in the trial court, which appears not to have been done.

The defendant attacks the validity of the tax deeds, but we think it unnecessary to discuss them. The testimony convinces us that these deeds were taken for the benefit of the estate, under an arrangement made with Apger. This places complainant, at best, in the attitude of a second mortgagee, whose interest is cut off by the foreclosure sale to the defendant under the first mortgage.

The decree of the circuit court is reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.